In the Supreme Court of Georgia

Decided:   October 6, 2014

S14A0936. DeTOMA v. THE STATE.

HINES, Presiding Justice.

Gary M. DeToma, Sr., ("DeToma") appeals from the denial of his motion to withdraw his plea of guilty to the malice murder of his five-year-old son, Gary, Jr. ("Gary").  For the reasons that follow, we affirm.

According to the factual basis for the plea that the State presented at the plea hearing, DeToma and his wife were in the midst of divorce proceedings and, in order to prevent her from exercising custody of his two sons, DeToma intended to kill both sons, and then himself.  On the morning of July 12, 2012, he succeeded in killing Gary, first putting a pillow over his face and suffocating him, then placing a plastic bag over his head, and securing it with duct tape; either or both of these acts could have caused Gary's death.  DeToma began an attack on his other son, four-year-old William, but did not succeed in carrying it out; apparently DeToma had ingested sleeping pills and pain killers in a quantity sufficient for him to become temporarily incapacitated.  Because

DeToma had not gone to work that morning, a co-worker went to DeToma's home and knocked on the front door. William responded and opened the door to the extent a chain latch allowed this to be done. The co-worker, realizing something was wrong, cut the chain on the door, entered the home, and found DeToma on a bed with Gary; the co-worker attempted to revive Gary, could not, and fled the home with William. Law enforcement officers arrived at the home, placed DeToma in custody and, some hours later, DeToma admitted to killing Gary.

DeToma was indicted for the malice murder of Gary and for criminal attempt to commit murder in connection with the attack on William. The State filed a notice of its intent to seek the death penalty and, on May 15, 2012, DeToma pled guilty to the malice murder charge and, as recommended by the State, he was sentenced to life without the possibility of parole for that crime; the count for attempt to commit murder was placed on the dead docket. A timely motion to withdraw DeToma's guilty plea was filed by plea counsel; a hearing on the motion was held; the motion was denied; and DeToma filed this appeal.

1. Asserting that he did not wish to plead guilty, DeToma contends the

2

trial court erred in denying his motion to withdraw his plea because it was not freely and voluntarily entered.

> To determine whether a guilty plea is valid, the record must show that the defendant understands the plea and the constitutional rights that he is relinquishing. *Boykin v. Alabama*, 395 U.S. 238 (89 SCt 1709, 23 LE2d 274) (1969). The State has the burden on direct review of establishing that the plea was entered intelligently and voluntarily. *King v. State*, 270 Ga. 367 (1) (509 SE2d 32) (1998). The State may meet this burden "by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." (Citation and punctuation omitted.) *Loyd v. State*, 288 Ga. 481, 485 (2) (b) (705 SE2d 616) (2011). After sentencing, the decision on a motion to withdraw a guilty plea is within the trial court's discretion and withdrawal of the plea is allowed only when necessary to correct a manifest injustice. *Walden v. State*, 291 Ga. 260 (1) (728 SE2d 186) (2012); Uniform Superior Court Rule (USCR) 33.12.

*Wright v. State*, 292 Ga. 825, 826 (1) (742 SE2d 468) (2013).

At the hearing on his motion to withdraw his plea, DeToma presented evidence that, prior to the plea hearing, the advice of his attorneys and his family was that he plead guilty to Gary's murder and accept the offer of a recommendation of a life sentence without the possibility of parole, as it was the best deal that could be secured, and that the advice to do so was often strident. DeToma testified at the hearing that he nonetheless wanted to go to trial, even

3

though he recognized that doing so would likely result in a death sentence. He described his attorneys as "bullying" and "intimidating," and said that he was "forced" to plead guilty; he admitted that there were no physical or verbal threats made against him, and that he knew that it was his decision to make, but that he nonetheless felt "pressured" to plead guilty.[1] DeToma's mother testified that, the day before pleading guilty, he said "I don't want to give up, but I'll take the plea. I'll take it for you, Mom. I'll take it for Anthony (i.e., DeToma's brother)." His mother testified that DeToma said that he wanted his "story heard," and that she told him it was his life, that he had to make the decision, and that no one could do it for him. There was testimony from his brother Anthony that DeToma "wanted to be heard," and that in his conversations with DeToma, it "was always very clear" that whether to plead guilty was DeToma's decision.

The lead attorney for DeToma's defense testified that the day of the plea hearing, DeToma said that he did not want to plead guilty, but recognized that he had no options, and that he wanted to "get it over with." And, as DeToma

---

[1] The trial court specifically found that defense counsel did not manipulate DeToma into pleading guilty.

4

was exiting the courtroom after his plea hearing, when he saw that no media representatives were present in the courtroom, he told his lead counsel that he should have gone to trial. DeToma then wrote a letter to the court stating "I did not want to plead guilty today."

"Entering a guilty plea as a result of advice received does not amount to coercion. [Cit.]" *Walden v. State*, 291 Ga. 260, 261 (1) (728 SE2d 186) (2012). And, a guilty plea certainly may be freely and voluntarily entered, even though family pressure persuades a defendant to make that decision. See *Shaheed v. State*, 276 Ga. 291 (2) (578 SE2d 119) (2003); *Walker v. State*, 304 Ga. App. 55, 57 (1) (695 SE2d 375) (2010); *Pirkle v. State*, 240 Ga. App. 24, 25 (1) (522 SE2d 526) (1999). In deciding whether to go to trial, DeToma was faced with a choice among very poor options, and, of course, it is not uncommon for a defendant to regret the choice to plead guilty. See *State v. Evans*, 265 Ga. 332, 336 (3) (454 SE2d 468) (1995). But, the State's burden is to show that a guilty plea was entered intelligently and voluntarily, *King*, supra; there is no burden on the State to show that, *before* entering a plea, a defendant resolved to do so without wavering or agonizing over the decision, or that *after* his plea, he had no second thoughts as to entering it. See *Walden*, supra. At his plea hearing,

5

DeToma testified that: he was not under the influence of alcohol, drugs, or any other substance; he knew he could choose a jury trial; no threats or promises had been made to influence his plea, other than the State's sentencing recommendation; he was satisfied with the representation of his attorneys; he was, in fact, guilty of murdering Gary, and of the criminal attempt on William's life; he wanted to plead guilty; and he desired to waive his rights and plead guilty. Also at the hearing, in the presence of his attorney and the prosecutor, DeToma completed a form specifying each of the rights he was giving up by pleading guilty, including the right to a trial by jury; he initialed each right he specifically waived and signed the form, which was notarized. The record amply supports the trial court's determination that DeToma pled guilty "knowingly, voluntarily, intelligently and without coercion." There was no abuse of the court's discretion in denying the motion to withdraw the guilty plea.

2. DeToma contends that, at the hearing on his motion to withdraw his guilty plea, the trial court should have admitted into evidence the audio recording of the plea hearing that had been made by the court reporter. The transcript of a plea hearing is "presumed to be the true, complete, and correct"

record of what transpired during it. OCGA § 15-14-5.[2] It is uncontroverted that

the transcript correctly reports what DeToma said at the plea hearing. Compare

*Slakman v. State*, 272 Ga. 662, 665 (2) (533 SE2d 383) (2000). What DeToma

contends is that the recording would allow the trial court to discern nuances in

his plea hearing testimony so as to aid that court in evaluating his claim that he

did not voluntarily plead guilty, and also this Court in reviewing the trial court's

decision.

DeToma did not attempt to supplement the transcript using the procedures

set forth in OCGA § 5-6-41 (f).[3] It is a rare instance in which the official

---

[2] OCGA § 15-14-5 reads:

It shall be the duty of each court reporter to transcribe the evidence and other proceedings of which he has taken notes as provided by law whenever requested so to do by counsel for any party to such case and upon being paid the legal fees for such transcripts. The reporter, upon delivering the transcript to such counsel, shall affix thereto a certificate signed by him reciting that the transcript is true, complete, and correct. Subject only to the right of the trial judge to change or require the correction of the transcript, the transcript so certified shall be presumed to be true, complete, and correct.

[3] OCGA § 5-6-41 reads in pertinent part:

(a) In all felony cases, the transcript of evidence and proceedings shall be reported and prepared by a court reporter as provided in Code Section 17-8-5 or as otherwise provided by law.

. . .

(f) Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal

transcript of a court proceeding would need addenda such as DeToma sought to introduce, and this is not one. The trial court noted that it well recalled the hearing, and the persons affected during it, and considered the audio recording to be irrelevant. This was not error. During the plea hearing, DeToma never stated to the court that he felt pressured to plead guilty, and it is uncontroverted that he exhibited considerable emotion, including, after pauses, responding "yes" in a low, cracking voice, to the questions as to whether he was in fact guilty and wished to so plead. The issue DeToma wishes to shed light on now is *why* he exhibited such emotion. He contends that it was because he was being pressured to act against his true will, but, as the trial court observed, under all the circumstances of the case, such emotion would be expected. DeToma argued below that the audio recording would reveal the "emotional content" of his demeanor, but as noted, there was no dispute that he had an emotional demeanor; he did not below, nor does he on appeal, suggest that the recording

or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

8

contains any characteristic that reveals the *reason* for the emotions he displayed, and thus fails to show why the "true, complete, and correct" record of the plea hearing needed to be supplemented.[4] The trial court did not abuse its discretion in excluding the court reporter's audio recording of the plea hearing. See *Woodall v. State*, 294 Ga. 624, 632 (8) (754 SE2d 335) (2014).

Judgment affirmed. All the Justices concur.

---

[4] The proffered exhibit was included in the record on appeal. It contains nothing to indicate the reason underlying DeToma's emotional state.